The Court, my name is Greg Wallace. I represent April Dixon in this Social Security Disability Appeal. Ms. Dixon is unable to work due to the combined effects of intellectual disability, extreme obesity, hypothyroidism, depression, and anxiety. She filed her claim in 2006, so it is well into its second decade. Now the issue before the Court today is whether the ALJ's decision that Ms. Dixon does not meet Listing 1205C for intellectual disability is supported by substantial evidence on the record as a whole. Now earlier we talked about the new Listing 1205B under the older Listing 1205C for mental retardation. There are three requirements, a valid IQ score from 60 through 70, deficits in adaptive functioning, and a physical or other mental impairment imposing an additional and significant work-related limitation of function. The ALJ in this case found that her IQ scores were not valid and she had no additional significant limitation of function. He did not reach the question of her adaptive functioning. The District Court agreed with us that Ms. Dixon has valid IQ scores in the Listing range, but she affirmed the Commissioner's decision on the ground that the ALJ, that substantial evidence supports the ALJ's finding of no additional significant impairment. So we ask this Court to affirm the District Court on the IQ issue, but reverse on the additional and significant impairment. Now to begin with, the standard for this additional and significant impairment is extremely low. As this Court has explained in the Moresh and Cook and other cases, that the standard here that the term significant simply means more than slight or minimal. So this part of the Listing is met if there is an additional physical or other mental impairment that has more than a slight or minimal effect on Ms. Dixon's ability to work. The impairment, as this Court pointed out in the Surd case, does not need to be disabling in itself. And as 42 U.S.C. D2B explains, the additional impairment is to be evaluated either alone or in combination with other impairments. Now the ALJ's decision that Ms. Dixon did not have an additional significant impairment is not supported by substantial evidence on the record as a whole. There are three additional impairments from which Ms. Dixon suffers. Hypothyroidism, morbid obesity, and depression. Her hypothyroidism has certain physical effects. She has been treated for this since 2004. She has, as we laid out in our reply brief, reported symptoms on multiple occasions between 2006 and 2014 of weakness, fatigue, muscle joint stiffness, weight gain. Symptoms that traditionally... Can you tell us anything limiting of her work abilities, like limitations on lifting or movement or the kinds of activities that are generally done in work? No doctor found that either her morbid obesity or her hypothyroidism has specific limitations on her ability to work. But they were never asked about the work-related effects here. And what our argument is, is that the symptoms of which she complained here, weakness, fatigue, muscle and joint stiffness, are the types of symptoms that would affect one's ability to work. Dr. Hester also noted in January 2016 that she had emotional issues arising from her hypothyroidism. And what's interesting is three out of the four prior ALJs found her hypothyroidism a severe impairment at step two, which has the same standard. Has more than a slight or minimal effect on her ability to work. Ms. Dixon also suffers from morbid obesity. She's 5'6", weighs close to 270 pounds for a body mass index of 43. This is considered extreme obesity under the National Institute for Health Guidelines. And of course, obesity limits, causes limited endurance as well as fatigue. Again, no limitations by her doctors specifically related to her obesity. But as this court has recognized, that alone, the absence of limitations alone does not constitute substantial evidence supporting an ALJ's decision if there's no indication that the doctors were ever asked to what they thought about the limitations from that particular condition. And finally, she suffers from depression, which her symptoms here are that she's reported are sadness, loss of motivation and drive, irritability. Again, symptoms that can have an effect on a person's ability to work. Did she receive treatment for depression? Yes, she did. Dr. Hester actually noted that she was markedly impaired, not just due to her, in certain areas, not just due to her intellectual disability, but also her depression contributes to that marked impairment in that regard. So in this particular case, we have three impairments, hypothyroidism, morbid obesity and depression, that either alone or, and here's the important thing, in combination impose more than a slight or minimal limitation on Ms. Dixon's ability to work. So in this particular case, the ALJ's decision that she does not meet Listing 1205C because she does not have this additional significant limitation is simply not supported by the record. Thank you, Your Honor. Thank you, Mr. Wallace. Ms. Curtis? Good morning, Your Honors. May it please the Court. My name is Kizuwanda Curtis and I represent Andrew Saw, the Commissioner of Social Security. As Mr. Wallace pointed out, Listing 12.05C has three requirements. And while he tended to focus on the final requirement, which requires significant work-related limitations from another impairment, we submit that Ms. Dixon met none of the three requirements. It was her burden to establish that she met all three requirements and not only the portion that Mr. Wallace focused on. First of all, she did not have limits in adaptive functioning that manifested before she reached age 22, which was the first requirement. Per Social Security regulation, this looks to everyday activities such as shopping, cooking, maintaining a residence, maintaining grooming and hygiene. And Ms. Dixon's activities before she reached age 22 show that she did not have deficits in these areas. First, she cared for two young children. She had a 16-month-old and a 2-year-old that she cared for, and that included changing diapers, feeding them, bathing them, and dressing her children. One of her counselors also noted that when she interviewed Ms. Dixon, Ms. Dixon noted preparing fairly she engaged in social activities that included talking on the phone regularly, visiting with friends, and having regular visits with her mother. Even after she reached age 22, Ms. Dixon herself continued to deny that she had any deficits in everyday activities to her treatment providers, which was a reason for the ALJ to decide that she did not have the necessary deficits to meet the first requirement of the listing. Turning to the second portion of the listing, while Ms. Dixon had IQ scores that were between 60 and 70, which is the second requisite of the listing, Mr. Wallace tends to believe that he can hang his hat on the fact that the district court found that she did have the satisfactory IQ scores. But this court does a de novo review of the district court's decision and is not bound by their finding. In looking at the evidence, she had IQ scores that came from a psychologist and a counselor, and both said the scores were invalid. Specifically, one of the psychologists stated that it seemed as though she was malingering and exaggerating her symptoms in order to obtain the low IQ scores that she obtained. This same psychologist said that the scores were not valid. When evaluated by a counselor, while the counselor was not as definitive in evaluating the scores, the counselor said as to the validity and reliability of the testing, it was likely that her results were an underestimation of her true ability, i.e., invalid. This court has emphasized that an ALJ need not accept IQ scores on their face as valid. This court has said that they are to look at their activities and abilities as reflected in the record as a whole. In doing so, the ALJ found properly that she did not have IQ scores that were valid for satisfying the second prong of the listing. Turning to the final requirement, Mr. Wallace points to hyperthyroidism, obesity, and depression as demonstrative of impairments that would satisfy the third portion of the listing. However, in making that argument, he overlooks that during the 10-year relevant period, Ms. Dixon was consistently non-compliant and did not undergo treatment relative to her hypothyroidism. Though he noted that she reported symptoms such as fatigue and nausea throughout the relevant period, over the 10-year period, she only reported fatigue six times and only reported nausea three times. In addition to that, there was in fact one doctor that said that they did not believe that hypothyroidism was an adequate diagnosis for disability. Dr. Brinza was the name of that doctor. Turning to her obesity, essentially what we have here is a diagnosis with little else. While Mr. Wallace made a vague indication of possible symptoms from obesity, a review of the record shows that Ms. Dixon did not have much, if any, of these symptoms. Consistently, her physicians noted that she maintained normal gait, she had no issues with sitting ascending, she was able to sit, bend, and twist without difficulty, she had full strength throughout her upper and lower extremities, and she had adequate energy to go about her daily activities. Further, her physicians never placed any physical limitations on her ability to perform work-related activities due to her obesity. And last, Ms. Dixon herself never alleged functional limitations due to obesity during the administrative consideration of her claim. She had the opportunity to do so in her disability paperwork. She made no indication that she had problems with obesity. She had the opportunity to testify at her hearing, and she did not report this to the ALJ. And she did not report that she had problems stemming from obesity to her physicians. And relative to depression, there was one consultative examiner that she saw who noted that she had marked impairment in her ability to understand, remember, and carry out simple instructions and make simple work-related decisions partially due to obesity. However, the examination that this doctor conducted just two days before his opinion does not square with his opinion. During the examination, he noted that she was only slightly depressed, and he opined that she could cope with the mental demands of simple work to attend and concentrate on basic tasks and complete work tasks in an acceptable time period, which is consistent with the ALJ's residual functional capacity. This Court has held that such internal inconsistencies with an opinion from a doctor is a reason to discount the opinion. Thus, the ALJ properly discounted that opinion. In conclusion, we respectively submit that Ms. Dixon has not satisfied any of the three prongs of Listing 12.05c and ask that the Court affirm the Commissioner's final decision and deny Dixon's appeal. Thank you. I see no questions. Mr. Wallace? If it pleases the Court, I have just a couple of quick points to make on rebuttal here. With all due respect to the Commissioner, the question of adaptive functioning is not really at issue in this case. It was not raised in District Court, and more importantly, the ALJ did not reach the question of whether Ms. Dixon has the requisite deficits in adaptive functioning. So the Commissioner is really asking you to go to a place where the ALJ himself did not go, and I think that raises some serious questions under the Chenery Doctrine here. Certainly, if it is an issue, there is ample evidence in the record of deficits in adaptive functioning. Both Dr. Ziolko and Dr. DeRoke, who gave the intellectual examinations of Ms. Dixon, found that she has deficits in adaptive functioning. In fact, Dr. Roke diagnosed her as having mental retardation, which under the APA definitional requirements for that particular disorder, it requires at least two deficits in two areas of adaptive functioning to have a diagnosis of mental retardation. Now, with respect to Ms. Dixon's IQ scores, the District Court concluded that the ALJ was wrong, that these scores were invalid. This is not the first time the District Court has concluded that. That conclusion occurred in an earlier decision as well. And the Court found no evidentiary support for the ALJ's determination that the IQ scores were invalid. We ask that this Court affirm this part of the District Court opinion. The Commissioner has not cross-appealed on this issue, but clearly as we set out in our reply brief, there is ample evidence in the record to undermine the ALJ's finding of invalid IQ scores. Now, with respect to the third question of her additional and significant impairment, I would simply emphasize the very low standard here. These impairments do not have to be disabling, but simply have to have a more than slight or minimal effect on her ability to work. Thank you.